UNTIED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MARIA ELENA MESIBOV,     No. 13-10864-j7

    Debtor.

KIRTLAND FEDERAL CREDIT UNION,

    Plaintiff,

v.     Adv. No. 13-1069 T

MARIA ELENA MESIBOV,

    Defendant.

## MEMORANDUM OPINION

Kirtland Federal Credit Union ("Kirtland") asks the Court to deny the debtor Maria Mesibov's Chapter 7 discharge pursuant to § 727(a)(4)(A),[1] alleging that she materially understated her income from employment, alimony, and child support. Kirtland moved for summary judgment on all issues,[2] the Debtor responded,[3] and Kirtland replied in support of its Motion.[4] For the reasons set forth below, the Court concludes that the Motion is not well taken and should be denied.

---

[1] All statutory references are to 11 U.S.C.
[2] Motion for Summary Judgment, filed December 30, 2013, doc. 8, and attachments (the "Motion").
[3] Response to Plaintiff's Motion for Summary Judgment, filed January 19, 2014, doc. 10, and attachment (the "Response").
[4] Reply to Defendant's Response to Motion for Summary Judgment, filed January 31, 2014, doc. 11 (the "Reply").

I.   Facts

Based on the Court's docket and the record submitted by Kirtland,[5] the Court finds there is no genuine dispute about the following facts:

1.   The Debtor commenced this voluntary Chapter 7 case on March 15, 2013 (the "Petition Date").

2.   When she filed for bankruptcy relief, the Debtor's ex-husband was paying her $4,700 per month in alimony, $1,000 of which was paid directly to her divorce lawyer on account of his unpaid legal fees. The ex-husband was also paying the Debtor $334 per month in child support.

3.   On the Petition Date the Debtor filed her Schedules A-J ("Schedules"), Statement of Financial Affairs ("SOFAs"), and Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Means Test").

4.   The Schedules, SOFAs, and Means Test were signed by the Debtor under oath.

5.   There is no disclosure in the Schedules, SOFAs, or Means Test of the $1,000 monthly payment from the Debtor's ex-husband to the Debtor's divorce attorney.

6.   Schedule B (17) does not disclose any right to receive alimony, maintenance or child support.

7.   Schedule I discloses a monthly payment of $3,700 for "alimony, maintenance or support payments."

---

[5] Kirtland supported the Motion with a transcript of Debtor's deposition, which included the following as exhibits: a retail installment contract for the car Kirtland financed; the Credit Agreement (defined below); portions of the Schedules and SOFAs (both defined below); and an unsigned copy of a Marital Settlement Agreement, to be signed by the Debtor and her ex-husband. Kirtland also submitted certain requests for admission, to which no responses were attached. The Court cannot tell if the Debtor responded to the requests for admission or not. In any event, any deemed admissions would not be material.

-2-

8. The Means Test discloses monthly alimony income of $3,366 and monthly child support income of $334.

9. No right to receive child support, and no child support payments, are disclosed in the Schedules or SOFAs.

10. Schedule I lists monthly wages of $1,149. The Means Test shows average monthly wages of $1,005, and wages of $933 in November 2012.

11. In November 2012 the Debtor completed a DealerTrack credit application ("Credit Application"), in which she represented that her monthly salary was $1,500 and her monthly alimony income was $6,000.

12. Kirtland commenced this adversary proceeding August 2, 2013.

13. On August 13, 2013, the Debtor filed an amended Schedule I, adding monthly child support of $334, and filed an amended Means Test, increasing the alimony payment from $3,366 to $3,700.

14. The Debtor's only evidence submitted in opposition to the Motion is the following sworn statement:

> I Maria Mesibov have never intentionally made a false statement to the bankruptcy court. I contest the fact that I deliberately misrepresented anything to the court. I contest the fact that I was making what they say I was making on my car loan application at the time I filed for bankruptcy. I contest the fact that I deliberately mislead the court by not listing my alimony and support on Schedule B. I forgot to mention the child support payments to my bankruptcy attorneys, which is why it was originally not listed on my bankruptcy petition, which was amended to correct this discrepancy. I contest the fact that I deliberately mislead the court by not listing my alimony and support on Schedule B.[6]

## II. Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---
[6] Debtor's affidavit attached to the Response.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). *See also Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir.1993) ("[T]he nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."); *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980) (Once a properly supported summary judgment motion is made, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried); *Lazaron v. Lucas (In re Lucas)*, 386 B.R. 332, 335 (Bankr. D.N.M. 2008) (same).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . .

summary judgment may be granted." *Anderson,* 477 U.S. at 249. Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### III. Section 727(a)(4)(A)

Upon a timely objection filed by a creditor, the Court may decline to grant a discharge to a Chapter 7 debtor who "knowingly and fraudulently, in or in connection with the case, made a false oath or account." §§ 727(a)(4)(A) and (c)(1).

"The purpose behind [§ 727(a)(4)(A)] is to enforce a debtor's duty of disclosure and ensure that the debtor provides reliable information to those who have an interest in the administration of the estate." *Sierra Chemicals, LLC, v. Mosley* (*In re Mosley*), 501 B.R. 736, 742 (Bankr. D.N.M. 2013), citing *Manning v. Watkins (In re Watkins)*, 474 B.R. 625, 635 (Bankr. N.D. Ind. 2012), *aff'd*, 2013 WL 3989412 (N.D. Ind. 2013).

Section 727(a)(4)(A) has been distilled into four elements: (1) the debtor must make a false statement under oath; (2) the debtor must know that the statement was false; (3) the debtor must make the statement with fraudulent intent; and (4) the statement related materially to the bankruptcy case. *Mosley*, 501 B.R. at 742, citing *Rajala v. Majors (In re Majors)*, 330 B.R. 880, at *3 (10th Cir. BAP 2005). *See also In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992) (using five factors that result in an identical test); *Bishop v. Mulholland (In re Mulholland)*, 2011 WL 4352293, at *4 (Bankr. D.N.M. 2011) (discussing elements). Omissions of assets from the schedules are considered false oaths for purposes of § 727(a)(4)(A). *Majors*, 330 B.R. 880, at *3, citing *Job v. Calder (In re Calder),* 907 F.2d 953, 954 (10th Cir. 1990) (per curiam).

Case 13-01069-t    Doc 13    Filed 02/25/14    Entered 02/25/14 11:05:03 Page 5 of 13

To prevail on a § 707(a)(4)(A) action, Kirtland must prove that the Debtor's false oaths were made "knowingly and fraudulently." *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997) (citations omitted). Reckless indifference to the truth is sufficient to show intent to defraud. *Boroff v. Tully (In re Tully),* 818 F.2d 106, 112 (1st Cir. 1987); *NJL Investments, LLC, v. Smart (In re Smart),* 481 B.R. 79, 89 (Bankr. N.D. Okla. 2012). Fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct. *Farmers Co-op Ass'n of Talmage, Kan., v. Strunk,* 671 F.2d 391, 395 (10th Cir. 1982). *See also Wachovia Bank, N.A. v. Spitko (In re Spitko),* 357 B.R. 272, 314 (Bankr. E.D. Pa. 2006) (fraudulent intent may be inferred from all the facts and circumstances of a case); *U.S. Trustee v. Richesin (In re Richesin),* 2008 WL 413284, at *8 (Bankr. D.N.M. 2008) (citing *Spitko* and *Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 252 (4th Cir. 1987)). However, "[a] debtor will not be denied [a] discharge if a false statement is due to mere mistake or inadvertence. Moreover, an honest error or mere inaccuracy is not a proper basis for denial of discharge." *Brown*, 108 F.3d at 1294-95.

To deny a debtor's discharge under § 727(a)(4)(A), the false oath must relate materially to the bankruptcy case. *Mosley*, 501 B.R. at 742, citing *Majors*, 2005 WL 2077497, at *3 (10th Cir. BAP 2005).

> [N]either value nor detriment to creditors is relevant to the determination of whether the omission is "material" within the meaning of 11 U.S.C. § 727(a)(4). *See DeVoll,* 266 B.R. at 98 ("'[i]n determining whether an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors. The subject matter of a false oath is 'material,' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, *or* concerns the discovery of assets, business dealings, *or* the existence and disposition of his property.'")(quoting *Beaubouef,* 966 F.2d at 177 (emphasis added)). *See also Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir.1984) (per curiam)(same)(citing *In re Steiker,* 380 F.2d 765, 768 (3rd Cir.1967).

*Richesin,* 2008 WL 413284, at *8. In *Calder*, the Tenth Circuit held that a debtor may not escape § 727(a)(4)(A) "by asserting that the admittedly omitted information concerned a worthless business relationship or holding; such a defense is specious." 907 F.2d at 955, citing *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). Similarly, in *In re Garland*, 417 B.R. 805 (10th Cir. BAP 2009), the Tenth Circuit Bankruptcy Appellate Panel held: "[M]ateriality is not defeated by the fact that the undisclosed property interests are determined to be without value . . . [D]ebtors have an uncompromising duty to disclose whatever ownership interest they hold in property …." *Id.* at 815-16 (citations omitted). On the other hand, a court has held that if the bankruptcy estate would have no interest in an omitted asset, the omission is not material. *Robertson v. Swanson (In re Swanson),* 36 B.R. 99, 100 (9th Cir. BAP 1984). *See also In re Kuchecki,* 2010 WL 6259966, at *5 (9th Cir. BAP 2010) (citing *Robertson* and stating that an omission "is immaterial if it does not impact a bankruptcy case, such as might occur where the omission or misstatement concerns assets having little or no value, or that would not be property of the estate.). Similarly, omission of property that is not available to creditors has been held to be immaterial. *Lee Supply Corp. v. Agnew (In re Agnew),* 818 F.2d 1284, 1290 (7th Cir. 1987).

In a § 727(a)(4)(A) action, the burden of proof is on the plaintiff, but the burden shifts to the debtor if the plaintiff shows the existence of a false statement. "While the creditor bears the ultimate burden of proof under 11 U.S.C.S. § 727(a)(4), once the creditor has demonstrated an omission or false statement, the burden shifts to the debtor to show that the omission was the result of an honest mistake or to otherwise provide a credible explanation for the false statement. *Richesin,* 2008 WL 413284, at *8, citing *In re Caldwell,* 101 B.R. 728 (Bankr. D. Utah 1989).

Amendments to schedules done after omissions are brought to the attention of the debtor do not necessarily cure false oaths. *See Stathopoulos v. Bostrom*, 2003 WL 403138, at *3 (N.D. Ill 2003) ("[S]ubsequent voluntary disclosure does not relieve a debtor from the consequences of perjury . . . If debtors could omit assets at will with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive." (citations omitted)); *Heidkamp v. Whitehead (In re Whitehead)*, 278 B.R. 589, 595 (Bankr. M.D. Fla. 2002) ("A subsequent disclosure would not absolve the debtor from the original false statements made under penalty of perjury.)

The grant of a discharge is the strong policy preference. "Denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor. The provisions denying the discharge are construed liberally in favor of the debtor and strictly against the creditor." *Mosley,* 501 B.R. at 742, citing *Soft Sheen Products, Inc. v. Johnson (In re Johnson),* 98 B.R. 359 (Bankr. N.D. Ill. 1988), and *In re Shebel,* 54 B.R. 199, 204 (Bankr. D. Vt. 1985). *See also Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) (denying debtor's discharge is an extreme step and should not be taken lightly); *Commerce Bank & Trust Co. v. Burgess (In re Burgess),* 955 F.2d 134 (1st Cir. 1992), abrogated on other grounds, *Field v. Mans*, 516 U.S. 59 (1995) (reasons for denial of a discharge must be real and substantial rather than technical and conjectural); *FFI Group, LLC v. Olson (In re Olson),* 2014 WL 380388, at *2 (Bankr. W. D. Pa. 2014) (citing *Rosen's* "extreme step" language); *McVay v. DiGesualdo (In re DiGesualdo),* 463 B.R. 503 (Bankr. D. Colo. 2011) (denial of discharge should occur only in extreme circumstances); *Melarango v. Ciotti (In re Ciotti),* 448 B.R. 694, 702 (Bankr. W.D. Pa. 2011) (same).

IV.     Discussion

The Court must weigh the Debtor's statements and representations in her Schedules, SOFAs, and Means Test[7] to determine if there is a genuine issue of material fact that precludes entry of summary judgment in Kirtland's favor on its § 727(a)(4)(A) complaint.

    A.    <u>Failure to List Alimony on Schedule B</u>.  The Debtor did not disclose on Schedule B (17) her right to receive alimony payments.  The official form of Schedule B – Personal Property, requires disclosure of:

> Type of Property-- 17.  Alimony, maintenance, support, and property settlement to which the debtor is or may be entitled.  Give particulars.

The Debtor makes two arguments why her failure to list alimony rights on Schedule B does not implicate § 727(a)(4)(A).  First, the Debtor asserts that she disclosed her receipt of alimony[8] in Schedule I and in the Means Test, contradicting any inference that she intended to conceal her alimony rights.[9]

Second, the Debtor argues that alimony is not property of the bankruptcy estate, and therefore need not be listed on Schedule B.  The Debtor cites a Tenth Circuit case, *Peters v. Wise (In re Wise)*, 346 F.3d 1239 (10th Cir. 2003), which held that under Colorado law the bankruptcy estate does not have an interest in the alimony received in the 180 days after the bankruptcy petition date.  The holding in *Wise* was premised on the conclusion that the debtor did not have an "interest in property" in the spousal maintenance payments because such payments were a "personal right" as opposed to a property right.  *Id.* at 1241-43.  New Mexico law also holds that alimony payments are personal rights and not property rights.  *See Burnside v. Burnside*, 514

---

[7] Kirtland argues that the Debtor misstated her income in the Credit Application.  That is possible (although disputed by the Debtor), but irrelevant except insofar as the information on the application shows that the Debtor's statements in her bankruptcy filings are false.
[8] The disclosed monthly amount was incorrect, and was only partially corrected in August 2013.
[9] The Debtor also disclosed alimony payments to Kirtland on the Credit Application.

-9-

P.2d 36, 39 (N.M. 1973) ("The right to alimony is a continuation of the right to support. It is a personal and not a property right."); *Brister v. Brister*, 594 P.2d 1167, 1171 (N.M. 1979) ("Alimony is a personal right as opposed to a property right"); *Lovato v. Lovato,* 644 P.2d 525, 527 (N.M. 1982) ("Alimony is not intended as a penalty against a husband but is a personal right intended for the purpose of one spouse's supporting another."). If the right to alimony is not property of the Debtor's estate—perhaps not "property" at all—then it would be unavailable to creditors and not have to be scheduled.

Despite the case law discussed above, the Court thinks the better practice is to disclose alimony rights on Schedule B (17). Nevertheless, the Debtor's argument has some merit. For that reason, and because the Debtor did disclose her receipt of alimony payments elsewhere, her failure to list alimony on Schedule B (17) cannot form the basis for granting the Motion: clearly there are substantial fact issues about intent and materiality.

B. <u>Failure to List Child Support on Schedule B and Schedule I</u>. Next, Kirtland bases its Motion on the Debtor's failure to disclose the monthly child support payments she receives. This argument suffers the same problem as the argument about alimony, since the $334 monthly child support income was disclosed on the Means Test.

Furthermore, like alimony, child support may not be property of the Debtor's estate. Rather, the right to child support payment may belong to the child, even though the parent the support payments may bring an action to require payment. *See, e.g., King v. King (In re King)*, 233 B.R. 176, *2 (10th Cir. BAP 1999) (unpublished) ("[t]he emerging view . . . is that child support is a property interest belonging to the child. The custodial parent merely has a right to enforce the child's property interest."); *Stringer v. Dudoich*, 583 P.2d 462, 463-64 (N.M. 1978)

("In New Mexico . . . children are entitled to support from their mothers and fathers . . . A child has the right of support from his parents whether or not he is in their custody.").

While the Debtor and/or her counsel were sloppy about disclosing the Debtor's right to receive child support (as shown in part by the amendments filed on August 13, 2013), there are fact issues about the Debtor's intent for the omission, and how material the omission was.

C. <u>Income From Wages</u>. There is an inconsistency between the monthly wage income the Debtor disclosed on the Credit Application in November 2012 ($1,500) and the figure used for that month in the Means Test ($933). The Debtor did not adequately address the discrepancy in her Response, although the implication from her legal argument is that the figure in the Credit Application is wrong. In any event, there is a fact issue about how much she actually earned in November 2012, how much she earned on the Petition Date, the reasons for any discrepancies, and whether the discrepancies are material.

D. <u>Failure to Disclose the $1,000 Monthly Alimony Payment to Divorce Attorney</u>. The most serious omission is Debtor's failure to disclose the $1,000 monthly payment from her ex-husband to her divorce attorney.[10] From the current record, it seems clear that the payment should have been disclosed on Schedule I; in response to Question 3 of the SOFAs; and on line 10 of the Means Test. Furthermore, the undisputed evidence is that the Debtor is now receiving the $1,000 monthly payment post-petition, substantially supporting the conclusion that it was the Debtor's income on the Petition Date (similar to garnished wages).

The Debtor submitted little evidence on this crucial point, except for her affidavit testimony that she "contests the fact" she intended to make a false statement or mislead the Court. Her legal argument is similarly weak: she asserts that the "$1,000 dollars was ordered by the court to go directly to the Defendant's divorce attorney without her ever seeing any of it

---

[10] Presumably Richard S. Lees, as identified in Debtor's Schedule F.

making the amount of alimony paid to the Defendant $3,700, the amount listed on The Defendant's petition."[11]

Although, as discussed above, alimony may not be property of the estate under state law, it must be disclosed to determine a debtor's current monthly income ("CMI") under § 101(10A). *See e.g. In re Lewis*, 401 B.R. 431, 440 (Bankr. C.D. Cal. 2009) (CMI includes alimony), citing *In re Featherston,* 2007 WL 2898705, at *11 (Bankr. D. Mont. 2007) (same); Eugene R. Wedoff, *Means Testing in the New 707(b),* 79 Am. Bankr. L. J. 231, 244-45 (2005) (CMI includes alimony); *In re Hersh,* 2012 WL 5387627 (Bankr. N.D. Ill. 2012) (the court included alimony in its calculation of CMI). The Debtor apparently concedes the appropriateness of treating alimony as income in the Means Test, since she has done so for the balance of the alimony paid by the ex-husband.

Had the $1,000 monthly payment been included in the Means Test, the increase in income may have generated a presumption of abuse under § 707(b)(2). In such an event, the Debtor could have been required to convert the case to a Chapter 13 case, and perhaps pay unsecured creditors a substantial dividend.

Based on the current record, the Court cannot tell if the addition of the $1,000 monthly payment would create a presumption of abuse.[12] The Court concludes there are fact issues about the Debtor's intent when she failed to disclose the $1,000 monthly payment, and about the materiality of the omission. The Court therefore must take evidence on these issues at trial.

---

[11] Response, p. 3.

[12] For example, it is possible that the $1,000 payment to the Debtor's divorce attorney should be listed in line 28 as a court-ordered payment. It is also possible that line 45, dealing with Chapter 13 administrative expenses, would increase in such an amount that (even if the $1,000 payment was not listed in line 28) the Debtor would be eligible for Chapter 7 relief. it is possible that the $1,000 payment to the Debtor's divorce attorney should be listed in line 28 as a court-ordered payment. It is also possible that line 45, dealing with Chapter 13 administrative expenses, would increase in such an amount that (even if the $1,000 payment was not listed in line 28) the Debtor would be eligible for Chapter 7 relief. The Court has not been presented with evidence that would allow it to determine if the Debtor would be in Chapter 13 but for the omitted information.

VI. Conclusion

There is no question the Debtor did not fully disclose the particulars of her alimony and child support income, nor that the wage income she listed on the Petition Date differed from that represented on the Credit Application. Among other potential problems caused by the disclosure lapses, the failure to disclose the $1,000 monthly payment to Debtor's divorce lawyer could have affected the Means Test outcome. However, there are unresolved fact issues about the Debtor's knowledge of and intent with respect to the omissions, as well as their materiality. These matters should be determined at a trial on the merits.

The Court will enter an order denying the Motion, consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered on Docket: February 25, 2014.

Copies to:

Kevin D. Hammar
1212 Pennsylvania NE
Albuquerque, NM 87110

Matthew Gandert
1128 Pennsylvania St. NE
Suite 210
Albuquerque, NM 87110