UNTIED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MARIA ELENA MESIBOV,  No. 13-10864-j7

    Debtor.

KIRTLAND FEDERAL CREDIT UNION,

    Plaintiff,

v.  Adv. No. 13-1069 T

MARIA ELENA MESIBOV,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court after trial on the merits on Kirtland Federal Credit Union's ("Kirtland's") complaint to deny the Debtor's discharge under § 727(a)(4)(A).[1] At issue are the Debtor's disclosures about alimony, child support, and wage income in her bankruptcy schedules, Statement of Financial Affairs, and Means Test. The evidence before the Court consists of the Debtor's deposition and trial testimony, Plaintiff's trial exhibits, and the judicially noticed dockets in this adversary proceeding and the main bankruptcy case.

    I.    FINDINGS

Debtor is divorced, with two children who were 12 and 16 on the petition date. The divorce case[2] started in 2008, was protracted and difficult, and took an emotional toll on Debtor. Debtor's ex-husband, a doctor practicing in Los Alamos, New Mexico, pays monthly alimony

---

[1] Unless otherwise noted all statutory references are to 11 U.S.C.
[2] *Maria Mesibov v. David Mesibov,* no. D-0132-DM-200800026, New Mexico First Judicial District Court (the "Divorce Case").

and child support to her. The child support amount varies depending on Debtor's income and the custody arrangements. Initially, the ex-husband paid Debtor $1,300 per month in child support. On the Petition Date the amount was $334 per month. The alimony payments have remained steady at $4,700 per month. From the monthly alimony payment Debtor's ex-husband made a direct payment, per court order, of $1,000 to Debtor's former divorce lawyer, Richard Lees, resulting in a net monthly payment to Debtor of $3,700.[3]

In late 2012 and early 2013 Debtor had a number of part-time jobs,[4] including work for the Los Alamos Public Schools ($9.56 per hour); Jemez Physical Therapy ($10 per hour); Uli's Fashions ($10 per hour); and Pajarito Bar and Grill ($7.50 per hour). The number of hours she worked each month fluctuated.

The nature of Debtor's work made it difficult to obtain accurate information about her monthly wage income, which varied widely. Further, Debtor does not appear to have much facility for numbers or financial record-keeping. There is no evidence in the record about the level of Debtor's education, but the nature of the jobs she had and her trial testimony lead the Court to conclude that her skills and interests do not lend themselves to factual detail, financial accounting, or money management.

The Debtor filed this Chapter 7 bankruptcy case on March 15, 2013 (the "Petition Date"). Debtor's Schedule B does not have an alimony disclosure on line 17.[5] However, her receipt of

---

[3] Debtor testified that several months after she filed for bankruptcy relief, Mr. Lees stopped receiving the $1,000 monthly payment. No explanation was given for this change.
[4] Currently Debtor is unemployed.
[5] "Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars."

-2-

Case 13-01069-t    Doc 28    Filed 06/12/14    Entered 06/12/14 15:30:18 Page 2 of 15

monthly alimony payments clearly is disclosed in Schedule I, in her Statement of Financial Affairs, and in Form 22A (the "Means Test").[6]

Debtor's original Schedule I disclosed monthly receipts of $3,700 for "alimony, maintenance, or support." In her Means Test, Debtor broke this figure down into $3,366 per month of alimony and $334 per month of child support.

Kirtland took Debtor's deposition on July 23, 2013. At the deposition, Debtor disclosed the monthly payment of $1,000 to Mr. Lees, discussed above. It appears Debtor also figured out during her deposition that she receives $3,700 in alimony in addition to the $1,000 payment, and also receives an additional $334 per month in child support.

Kirtland commenced this adversary proceeding August 2, 2013. Debtor filed amended Schedules I and J on August 13, 2013. In Amended Schedule I Debtor added monthly income of $334.00 per month for child support. Further, in response to line 17[7] of her amended Schedule I Debtor stated:

> Debtor's divorce attorney had a court ordered lien on her alimony at the time of filing. Debtor's ex-husband paid $1,000 a month from her monthly alimony settlement directly to the divorce attorney. Debtor then only received the remaining balance of the monthly alimony payment of $3,700.

Debtor's amended Schedule J also reflects increased monthly expenses of $795, due to the addition of expenses for income taxes ($520) and telecommunications ($275). There is no evidence in the record that either additional expense is improper or excessive.

---

[6] The official title of the form is "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation."

[7] "Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document."

-3-

Debtor made similar changes to her amended Means Test, filed August 13, 2013 (the "Amended Means Test"). The $1,000 per month payment to Mr. Lees was not included or mentioned in the Amended Means Test.

Although the evidence on this point is thin, the $1,000 monthly payment to Mr. Lees appears to be pursuant to a valid, properly-perfected attorney charging lien. In her deposition Debtor described her ex-lawyer's interest as a "lien," and the amended schedule I describes the interest as a "court ordered lien." The Court is not aware of any court-ordered lien an attorney can obtain on a fund owed to a former client except for a charging lien.

In her Means Test and Amended Means Test Debtor stated she averaged $1,005 per month in wage income in the six months before the Petition Date. This included $933 per month for September-November, 2012. However, on January 18, 2013, the state court presiding over the Divorce Case adopted the Report and Decision of Hearing Officer Modifying Child Support (collectively the "State Court Order"). The State Court Order determined that the Debtor earned wages of $1,182.83 in September 2012; $2,049.49 in October 2012; and $1,659.67 in November 2012. Had these figures been used in her Means Test, Debtor would have showed average monthly wage income of $1,354 rather than $1,005.

## II.    § 727(A)(4) DENIAL OF DISCHARGE[8]

Upon a timely objection filed by a creditor, the Court may decline to grant a discharge to a Chapter 7 debtor who "knowingly and fraudulently, in or in connection with the case, made a false oath or account." §§ 727(a)(4)(A) and (c)(1). "The purpose behind [§ 727(a)(4)(A)] is to enforce a debtor's duty of disclosure and ensure that the debtor provides reliable information to

---

[8] Although the standard under § 727(a)(4)(A) was addressed in detail in the Court's Memorandum Opinion, doc. 12, addressing Plaintiff's Motion for Summary Judgment, some points bear repeating here.

-4-

those who have an interest in the administration of the estate." *Sierra Chemicals, LLC, v. Mosley (In re Mosley)*, 501 B.R. 736, 742 (Bankr. D.N.M. 2013), citing *Manning v. Watkins (In re Watkins)*, 474 B.R. 625, 635 (Bankr. N.D. Ind. 2012), *aff'd*, 2013 WL 3989412 (N.D. Ind. 2013).

    A.    <u>Elements</u>. Section 727(a)(4)(A) has been distilled into four elements: (1) the debtor must make a false statement under oath; (2) the debtor must know that the statement was false; (3) the debtor must make the statement with fraudulent intent; and (4) the statement must relate materially to the bankruptcy case. *Mosley*, 501 B.R. at 742, citing *Rajala v. Majors (In re Majors)*, 330 B.R. 880, at *3 (10th Cir. BAP 2005). *See also In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992) (using five factors that result in an identical test); *Bishop v. Mulholland (In re Mulholland)*, 2011 WL 4352293, at *4 (Bankr. D.N.M. 2011) (discussing elements).

    B.    <u>Burden of Proof</u>. In a denial of discharge action the party objecting to discharge must prove by a preponderance of evidence that the discharge should be denied. Relying on the Supreme Court's opinion in *Grogan v. Garner*, 498 U.S. 279 (1991), the Tenth Circuit has held that a preponderance of the evidence standard is appropriate in a § 727(a)(2) action. *First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156 (10th Cir. 1991). The same standard applies in the present, § 727(a)(4), action. *See Grogan*, 498 U.S. at 289 (citing legislative history indicating Congressional intent to use a preponderance of evidence standard for § 727(a)(4) proceedings).

The burden of proof rests with the plaintiff. "[A] person objecting to discharge of the debtor must show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed an act which bars discharge." *Farmers Co-op. Ass'n of Talmage, Kan. v. Strunk*, 671 F.2d 391, 394-95 (10th Cir. 1982) (decided under the Bankruptcy Act).

However, if the plaintiff shows the existence of a false statement, the burden shifts to the debtor to demonstrate honesty. "While the creditor bears the ultimate burden of proof under 11 U.S.C.S. § 727(a)(4), once the creditor has demonstrated an omission or false statement, the burden shifts to the debtor to show that the omission was the result of an honest mistake or to otherwise provide a credible explanation for the false statement." *U.S. Trustee v. Richesin (In re Richesin),* 2008 WL 413284, at *8 (Bankr. D.N.M. 2008), citing *In re Caldwell,* 101 B.R. 728 (Bankr. D. Utah 1989). This burden shifting promotes the fundamental purpose of § 727(a)(4)(A) of imposing a duty on the debtor to make full disclosure. If a debtor violates that duty it is appropriate for her to show why the false statement was a mistake rather than an act of dishonesty.

      C.    <u>Intent</u>. "A debtor will not be denied [a] discharge if a false statement is due to mere mistake or inadvertence. Moreover, an honest error or mere inaccuracy is not a proper basis for denial of discharge." *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294-95 (10th Cir. 1997). Reckless indifference to the truth is sufficient to deny the discharge, however. *See Boroff v. Tully (In re Tully)*, 818 F.2d 106, 112 (1st Cit. 1987) (discharge denied because debtor "exhibited the reckless indifference to the truth which has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)") (citations omitted); *Diorio v. Kreisler-Borg Const. Co.*, 407 F.2d 1330, 1333 (2nd Cir. 1969) (per curium) (reckless indifference to the truth is the equivalent of fraud); *In re Moreo*, 437 B.R. 40, 62 (E.D.N.Y. 2010) (discharge shall be denied if the debtor exhibited a reckless indifferent to the truth).

One court has held that a debtor who had fraudulently misreported his income but had no reason to do so was entitled to a discharge. "I am not impressed by the debtor's explanation, but there is no reason for him to have lied. A completely accurate response to the question would

not have affected this bankruptcy proceeding in any way, nor would it have forfeited or jeopardized his Social Security benefits. I conclude that the debtor's false answer was the result of carelessness or ignorance and was not a fraudulent act." *Coccia v. Fischer (In re Fischer)*, 4 B.R. 517, 518 (Bankr. S.D. Fla. 1980). This forgiving view has been rejected by at least one court. *Virovlyanskaya v. Virovlyanskiy (In re Virovlyanskiy)*, 2014 WL 1800411 (E.D.N.Y. 2014) (affirming bankruptcy court's decision not to apply standard used in *Fischer*).

D. <u>Materiality</u>. A debtor's fraudulent statement is not grounds for denial of the discharge unless the statement is material. *Richesin,* 2008 WL 413284, at *8. A false oath is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or property. *Id.* Most cases discussing materiality concern the failure to disclose estate property. In those cases, the value of an omitted asset is not necessarily determinative of materiality. *See, e.g., In re Garland*, 417 B.R. 805, 815-16 (10th Cir. BAP 2009) ("[M]ateriality is not defeated by the fact that the undisclosed property interests are determined to be without value . . . [D]ebtors have an uncompromising duty to disclose whatever ownership interest they hold in property ….").

Kirtland does not argue that Debtor hid assets, but rather that she understated her net income on her schedules and Means Tests. The materiality standard in such cases is less clear. While misrepresentations on a means test can form the basis for a § 727(a)(4) denial of discharge, *see In re Radloff,* 418 B.R. 316, 325 (Bankr. D. Minn. 2009), and *In re Crumley,* 428 B.R. 349, 365 (Bankr. N.D. Tex. 2010), determination of a debtor's "current monthly income," "total deductions from income," and "monthly disposable income" can be difficult and unclear.

At a minimum, the Court holds that if underreported income or excessive expenses show that no presumption of abuse arises when accurate disclosures would have shown the opposite,

the misrepresentation would be material. In other cases, where the result of the Means Test would not change even after disclosure adjustments are made, the Court will review the issue on a case-by-case basis.

E. <u>Grant of Discharge Preferred</u>. The grant of a discharge is the strong policy preference. "Denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor. The provisions denying the discharge are construed liberally in favor of the debtor and strictly against the creditor." *Mosley*, 501 B.R. at 742 citing *Soft Sheen Products, Inc. v. Johnson (In re Johnson),* 98 B.R. 359 (Bankr. N.D. Ill. 1988), and *In re Shebel,* 54 B.R. 199, 204 (Bankr. D. Vt. 1985). *See also Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) (denying debtor's discharge is an extreme step and should not be taken lightly); *Commerce Bank & Trust Co. v. Burgess (In re Burgess),* 955 F.2d 134 (1st Cir. 1992) abrogated on other grounds; *Field v. Mans*, 516 U.S. 59 (1995) (reasons for denial of a discharge must be real and substantial rather than technical and conjectural); *FFI Group, LLC v. Olson (In re Olson),* 2014 WL 380388, at *2 (Bankr. W. D. Pa. 2014) (citing *Rosen's* "extreme step" language); *McVay v. DiGesualdo (In re DiGesualdo),* 463 B.R. 503 (Bankr. D. Colo. 2011) (denial of discharge should occur only in extreme circumstances); *Melarango v. Ciotti (In re Ciotti),* 448 B.R. 694, 702 (Bankr. W.D. Pa. 2011) (same).

### III. DEBTOR'S ALLEGED UNDERREPORTED INCOME.

A. <u>The $1,000 Monthly Payment from Ex-Husband to Mr. Lees</u>.

1. <u>Should the Payment have Been Included in CMI?</u> The trial evidence makes clear that the ex-husband's total monthly alimony obligation to Debtor is $4,700. It is equally clear that, pursuant to a state court order, the ex-husband sent $1,000 of each monthly payment directly to Mr. Lees, to be applied to the attorney fees Debtor owed Mr. Lees for his

work in the divorce. Kirtland argues that the payment to Mr. Lees should have been included in Debtor's Means Test.

The means test is a key component of the BAPCPA amendments to the Bankruptcy Code. "The test seeks to ensure that debtors who can afford to repay at least a portion of what they owe their creditors do not abuse the bankruptcy process by filing under chapter 7." *Silvers v. Alanys (In re Alanya)*, 2010 WL 5348728 (Bankr. E.D. Va. 2010). The "means test is a blind legislative formula serving to determine, under an objective standard, whether the Court must presume that a filing is abusive." *In re Smith*, 2007 WL 1836874, at *8 (Bankr. N.D. Ohio 2007).

"Congressional policy is implemented not only by application of the means test under § 707(b)(2)(A) but also by application of the § 707(b)(2)(B) provisions relating to rebuttal of any presumption and § 707(b)(3), under which the court may consider the totality of a debtor's actual financial circumstances . . . ." *Id.*

The means test is based on "current monthly income" ("CMI") as defined in § 101(10A), less the amounts set forth in § 707(b)(2)(A)(ii), (iii), and (iv). The formula is contained in Official Form 22A.

While alimony may not be property of the estate,[9] it must be disclosed to determine a debtor's CMI under § 101(10A). *See, e.g., In re Lewis*, 401 B.R. 431, 440 (Bankr. C.D. Cal. 2009) (CMI includes alimony), citing *In re Featherston,* 2007 WL 2898705, at *11 (Bankr. D. Mont. 2007), affirmed, 2007 WL 2898705 (Bankr. D. Mont. 2007) (same); Eugene R. Wedoff,

---

[9] *See Peters v. Wise (In re Wise)*, 346 F.3d 1239 (10th Cir. 2003); *Burnside v. Burnside*, 514 P.2d 36, 39 (N.M. 1973) ("The right to alimony is a continuation of the right to support. It is a personal and not a property right."); *Brister v. Brister*, 594 P.2d 1167, 1171 (N.M. 1979) ("Alimony is a personal right as opposed to a property right"); *Lovato v. Lovato,* 644 P.2d 525, 527 (N.M. 1982) ("Alimony is not intended as a penalty against a husband but is a personal right intended for the purpose of one spouse's supporting another.").

-9-

*Means Testing in the New 707(b),* 79 Am. Bankr. L. J. 231, 244-45 (2005) (CMI includes alimony); *In re Hersh,* 2012 WL 5387627 (Bankr. N.D. Ill. 2012) (the court included alimony in its calculation of CMI). Thus, it is clear that the $1,000 monthly payment from the ex-husband to Mr. Lees should have been included in Debtor's CMI.

        2.    <u>Is the $1,000 Payment a Deductible Expense</u>? The crucial question is not whether the $1,000 monthly alimony payment is properly part of CMI (it is), but whether the monthly payment to Mr. Lees could be deducted as a court-ordered expense.[10] Some court-ordered pre-petition payments are not deductible because they can be stopped by the bankruptcy filing. *See, e.g., In re Strickland,* 504 B.R. 542, 546 (Bankr. D. Minn. 2014) (garnishments may not be deducted on Part V, line 28 because the payment would be discontinued after the petition date); *In re Cleaver,* 426 B.R. 390, 395 (Bankr. D.N.M. 2010) (same). On the other hand, Court-ordered payments that "ride through" bankruptcy, such as alimony or child support payments, are properly deductible in the Means Test. *See In re Egebjerg,* 574 F.3d 1045 (9th Cir. 2009) (alimony and child support are deductible); *In re Clary,* 2012 WL 868717, *16 (Bankr. M.D. Fla. 2012) (child support is deductible); *In re Maiorino,* 435 B.R. 806 (Bankr. D. Mass. 2010) (domestic support obligation is deductible).

From the sketchy record before the Court it appears Mr. Lees has a valid attorney charging lien on Debtor's right to receive alimony, which by court order is payable at $1,000 per month.[11] In general, such charging liens are unaffected by the bankruptcy filing of former client. *See, e.g., In re Electronic Metal Products, Inc.,* 916 F.2d 1502, 1505 (10th Cir. 1990) (attorney charging lien under Colorado law would have survived debtor's bankruptcy filing if the attorney

---

[10] Part V (Calculation of Deductions From Income), Line 28 (Other Necessary Expenses: court-ordered payments).

[11] Debtor's schedules indicate that on the Petition Date she owed Mr. Lees $18,703.

-10-

had given the required notice); *In re Benbow,* 496 B.R. 605, 612 (Bankr. D. Colo. 2013) (upholding attorney charging lien on the proceeds of the sale of the marital residence, ordered to be sold in a divorce proceeding); *In re Bingham,* 344 B.R. 648 (Bankr. W.D. Okla. 2006) (debtor may not avoid a properly perfected attorney charging lien under § 522(f)).

From the information in the record it appears Mr. Lees' charging lien can "ride through" the bankruptcy case unaffected. Thus, the payments would be deductible on the Means Test and the net effect of the $1,000 payment would be $0. If Mr. Lees' charging lien was avoidable, it was incumbent upon Kirtland to provide evidence of that fact because the burden of proof rests with Kirtland. No such evidence is before the Court.

B.  Child Support.

Another problem with Debtor's original income disclosure and Means Test calculation is that, even apart from the $1,000 issue, Debtor's combined alimony and child support income is $4,034 per month, not $3,700 per month. The smaller figure was disclosed in Debtor's original Schedule I and Means Test. The error was pointed out in Kirtland's deposition of the Debtor, and corrected when Debtor amended her Schedule I and Means Test August 13, 2013.

C.  Wage Income.

Another main focus of the trial was the wage component of Debtor's CMI. Debtor calculated her average wage income for the six months before the Petition Date by using $933 in wage income for September-November, 2012.[12] At trial, the Court admitted into evidence without objection the State Court Order, which contains, inter alia, findings about Debtor's wage

---

[12] The state court made projections about Debtor's likely income after November 2013. Based on, inter alia, the fact that Debtor's varied widely, the Court will not consider the projections. There is no evidence that the figures Debtor used for December, 2012-February, 2013 are inaccurate.

-11-

income for September-November 2012. Had those figures had been used rather than Debtor's figures, CMI would have increased by about $350:

| Month | Debtor's Wage Figures | Wages Using State Court Order |
|---|---|---|
| September 2012 | $933 | $1,182 |
| October 2012 | $933 | $2,049 |
| November 2012 | $933 | $1,660 |
| December 2012 | $933 | $933 |
| January 2013 | $1,149 | $1,149 |
| February 2013 | $1,149 | $1,149 |
| **Average:** | **$1,005** | **$1,354** |

Although no party argued that the Court is bound to use the State Court Order figures, the Court finds them credible.

Debtor testified that when she prepared her bankruptcy schedules and Means Test, she came up with her wage income from amounts deposited into her bank account. She testified that she believed the information was accurate, and that she did not intend to mislead anybody. She admitted, however, that the state court judge's findings probably were accurate. She did not explain why she chose not to use the state court judge's figures when she and her lawyer calculated her CMI.

IV. AMENDMENTS TO EXPENSES.

In the amendments to her schedules and Means Test Debtor added a $520 monthly expense for income taxes and a $275 monthly expense for telecommunications services. Kirtland did not object to these amendments or introduce any evidence that the expenses were improper or excessive. The Court assumes the expenses are legitimate and reasonable.

V. CORRECTED MEANS TEST

The following table shows the result of making the changes to Debtor's income and expenses discussed in this opinion:

|  | Original Means Test | Amended Means Test | Amended Means Test with State Court Wage Income | Amended Means Test with State Court Wage Income and $1,000 alimony |
|---|---|---|---|---|
| Wage Income | $1,005 | $1,005 | $1,354 | $1,354 |
| Alimony/Child Support Income | $3,700 | $4,134 | $4,134 | $5,134 |
| Total Income | $4,705 | $5,139 | $5,488 | $6,488 |
| Original deductions | $4,926 | $4,926 | $4,926 | $4,926 |
| Income tax deduction | $0 | $520 | $520 | $520 |
| Telecommunications expense | $0 | $275 | $275 | $275 |
| Payment to Mr. Lees | $0 | $0 | $ | $1,000 |
| Total Deductions | $4,926 | $5,721 | $5,721 | $6,721 |
| Disposable Income | [$221.10] | [$682.10] | [$233] | [$233] |

If Debtor had used all of the appropriate figures, then based on the current record, her net monthly income would have been a negative $233, rather than the negative $221 shown on her original Means Test.

VI. KNOWLEDGE; INTENT TO DECEIVE

A. Alimony and Child Support.

The Debtor testified that she told her bankruptcy counsel about all alimony payments, including the $1,000 payments to Mr. Lees, and that she relied on counsel to prepare the bankruptcy documents appropriately. The Court finds this testimony credible. The disclosure issues regarding the $1,000 payment are somewhat unusual; appropriate disclosure would not be obvious to a lay person. The Court finds that Debtor did not knowingly make a false statement with regard to the $1,000 payment, nor had any fraudulent intent. The strongest circumstantial evidence supporting this finding is the disclosure of the payment in the Debtor's amended Schedule I.

With respect to the failure to list an additional $334 in alimony/child support payments, the Court concludes, similarly, that the Debtor did not knowingly make a false statement about this amount, nor intend to deceive any party.

Clearly, Debtor and her counsel could have done a better job of disclosing alimony on her bankruptcy schedules. The better practice would have been to include alimony on Schedule B, even though it may not be estate property. Debtor should have done more to verify the full amount of alimony and child support she received monthly. Finally, Debtor should have included the $1,000 per month of alimony paid to Mr. Lees on Schedule I and the Means Test, and then deducted it as an expense.

  B. <u>Wages</u>.

Debtor's wage calculation was sloppy, but her average figure only differed from the average obtained using the State Court's figures by about $350 a month. The numbers involved are not large; using the September-November 2012 income figures found by the state court yields an annual wage income of less than $20,000. By the time she filed her bankruptcy case, Debtor's wage income had steadied to about $1,100 per month, or about $13,000 per year. Currently it is $0. Her "guesstimate" of $933 per month for late 2012 seems reasonable given the context. The Court finds that Debtor's statements were not knowingly false, and that Debtor had no fraudulent intent.

If Debtor and her counsel had disclosed all income and expenses correctly in the first instance, the Means Test would have shown a greater monthly negative than it did. This strongly suggests that Debtor did not intend to make false statements. Rather, the evidence points toward poor preparation of Debtor's bankruptcy schedules, SOFAs, and Means Test, for which counsel must be held primarily responsible

VII. CONCLUSION

The Court finds that the Debtor tried to fill out her bankruptcy schedules accurately. She is not sophisticated in financial or business matters and was adversely affected by the divorce. With better guidance from her counsel, this adversary proceeding likely could have been avoided. The Court concludes that Debtor did not knowingly make false statements, nor did she have fraudulent intent when she signed and filed her original bankruptcy documents. Given the strong public policy favoring the granting of a discharge, the Court concludes that the discharge should be granted in this case.

The Court will grant the Debtor a discharge. A separate judgment consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 12, 2014.

Copies to:

Kevin D. Hammar
Jason Wexler
1212 Pennsylvania NE
Albuquerque, NM 87110

Matthew Gandert
1128 Pennsylvania St. NE
Suite 210
Albuquerque, NM 87110

Maria Elena Mesibov
8401 Spain Rd. NE Apt 31D
Albuquerque, NM 87111